1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Sallie Kim, Magistrate Judge

4

5   UNITED STATES OF AMERICA,        )
                                     )
6            Plaintiff,              )
                                     )
7   vs.                             )        No. 24MJ71740-MAG
                                     )
8   YINPIAO ZHOU,                   )
                                     )
9            Defendant.              )
    _____)

10

11                                   San Francisco, California
                                     Tuesday, December 10, 2024
12

13  <u>TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 10:45 - 11:02 = 17 MINUTES</u>

14

15  <u>APPEARANCES</u>:

16  For Plaintiff:
                                United States Attorney's
17                                Office
                                450 Golden Gate Avenue
18                              Eleventh Floor
                                San Francisco, California
19                                94102
                          BY:   GALEN A. PHILLIPS, ESQ.
20
    For Defendant:
21                              Federal Public Defender
                                450 Golden Gate Avenue
22                              Nineteenth Floor
                                San Francisco, California
23                                94102
                          BY:   CANDIS L. MITCHELL, ESQ.
24

25          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

1  For Pretrial Services:
                          BY:  HANNAH DEBOIS

2

3  Transcribed by:            Echo Reporting, Inc.
                              Contracted Court Reporter/
4                             Transcriber
                              echoreporting@yahoo.com
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Tuesday, December 10, 2024</u>                    <u>10:45 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4        THE CLERK:  Now calling criminal matter 24-71740,

5  United States versus Yinpiao Zhou.

6      Counsel, please state appearances for the record,

7  starting with the Government.

8        MR. PHILLIPS:  Good morning, again, your Honor.

9  Galen Phillips on behalf of the United States.

10       THE COURT:  Good morning.

11       MS. MITCHELL:  Good morning, your Honor.  Candis

12  Mitchell on behalf of the person charged as Mr. Zhou,

13  present before the Court, in custody.

14       THE COURT:  Thank you.

15     Mr. Zhou, you are here today because you've been

16  charged in the Central District of California with a -- in a

17  Criminal Complaint with violations of two United States

18  statutes.  And, today we'll talk about the charges against

19  you, your rights under the constitution and set some hearing

20  dates and talk about other issues, as well.

21       MS. MITCHELL:  And, your Honor, just for the

22  record, Mr. Zhou does indicate that he speaks and

23  understands some English.  He's informed me that if it's a

24  complicated legal word, he does not know what that word is.

25  So, I don't know how the Court would like to proceed.

4

1          THE COURT:  I was just going to ask that question.

2   So, Mr. Zhou, we have a certified court interpreter in

3   Mandarin.  And so, would you like her to stand by your side,

4   in case I say something that you don't understand in

5   English?

6          THE DEFENDANT:  If it's a complex legal term --

7          THE COURT:  Uh-huh.

8          THE DEFENDANT:  -- even if it's translated into

9   Mandarin, I wouldn't be able to necessarily really

10  understand.

11         THE COURT:  Okay.

12         THE DEFENDANT:  If you can explain it in simple

13  English, then I'll be able to understand that.

14         THE COURT:  I usually try to anyhow.

15         THE DEFENDANT:  All right.

16         THE COURT:  But if there's something you don't

17  understand, let me know.

18         THE DEFENDANT:  Okay.

19         THE COURT:  Or let Ms. Mitchell know and I can

20  explain it.

21         THE DEFENDANT:  Sure.  Good.

22         THE COURT:  So, first of all, Mr. Zhou, you have

23  the right to an attorney to be present with you at all

24  stages of the proceedings, including if you're questioned by

25  law enforcement.  If you -- you can choose your own lawyer,

5

1 but if you cannot afford one, one will be appointed for you

2 at no cost.

3     And, Ms. Mitchell, are you asking to be appointed as

4 Mr. Zhou's lawyer?

5        MS. MITCHELL:  Yes, I am, your Honor.  We do have

6 a financial affidavit and I just need to have Mr. Zhou sign

7 it.

8     (Defendant signing document.)

9        THE COURT:  Okay.  I find that Mr. Zhou qualifies

10 for appointment of counsel and I'm appointing Candis

11 Mitchell of the Federal Public Defender's Office to

12 represent him.

13        THE DEFENDANT:  Thank you.

14        THE COURT:  Also, Mr. Zhou, you have the right to

15 remain silent.  You don't have to make a statement at any

16 time.  If you do make a statement, you can ask that your

17 lawyer be present.  If you start talking, you can stop, but

18 if you make a statement, it can be used against you.

19     And, Mr. Phillips, could you summarize the charges of

20 the complaint and the potential maximum penalties against

21 Mr. Zhou?

22        MR. PHILLIPS:  Yes, your Honor.  The Defendant has

23 been charged with two violations.  The first violation is a

24 Title 49 United States Code Section 46306, for failing to

25 register an aircraft, not providing transportation.  And,

*Echo Reporting, Inc.*

6

1    the second violation is Title 49 United States Code Section

2    46307 for violation of National Defense Airspace.

3        The maximum penalties are as follows.  For the failure

4    to register an aircraft, the maximum penalties are three

5    year imprisonment, one year of supervised release, $250,000

6    or twice the gross gain or gross loss resulting from the

7    offense and a $100 special assessment.

8        And, for the violation of National Defense Airspace, it

9    is one-year imprisonment, one-year supervised release,

10   $100,000 or twice the gross gain and gross loss resulting

11   from the offense, and a $25 special assessment fee.

12           THE COURT:  Mr. Zhou, do you understand the

13   charges and the potential maximum penalties against you?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Okay.  You also have a right to

16   something called a removal hearing, that is where the only

17   question is one of identity, are you the person named in

18   this particular complaint.  It's not of guilt or innocence.

19   And, you also have the right to waive, or give up your right

20   to that removal hearing, and go straight to the Central

21   District of California and have your case heard there.

22       Ms. Mitchell, how does this person want to proceed?

23           MS. MITCHELL:  Your Honor, I have spoken with Mr.

24   Zhou and he is agreeing that he is, in fact, the person that

25   is wanted in the Central District of California, that he

7

1  wishes to go forward with the detention hearing here.

2          THE COURT:  Okay.  All right.  So, sir, could you

3  state your name?

4          THE DEFENDANT:  My first name is Yinpiao, last

5  name is Zhou.

6          THE COURT:  Okay.  And how old are you, sir?

7          THE DEFENDANT:  Thirty nine.

8          THE COURT:  Okay.  So, you have the right to have

9  a detention hearing in this district, that is whether or not

10 you'll be released or detained in jail before you actually

11 are -- before your case is resolved, and my understanding is

12 that you want to be heard on that issue here in this court.

13 You do have that right.

14    You also have one more right, and that is, if you want

15 to, if you choose to plead guilty, you can plead guilty in

16 this district, but that requires agreement on the U.S.

17 Attorney here and also in the Central District of

18 California.  So, that -- you would have to get their

19 permission in order to do that.

20    But, Mr. Phillips, what's the Government's position on

21 detention?

22          MR. PHILLIPS:  We are seeking to have the

23 Defendant detained.

24          THE COURT:  Okay.  And, Ms. Mitchell, how are we

25 going to proceed?

8

1          MS. MITCHELL:  I'd like to go forward at this

2    time, your Honor, with the hearing to -- and argue for Mr.

3    Zhou's release.

4          THE COURT:  Okay.

5          MS. MITCHELL:  I also have (indiscernible).

6          THE COURT:  All right.  Go ahead.

7          MS. MITCHELL:  Your Honor, Mr. Zhou is a legal

8    permanent resident of the United States.  He is a Chinese

9    National, but he's a legal permanent resident of the United

10   States.  He's been residing at the same address in Brentwood

11   since February of this month (sic) -- of this year, and

12   while he's currently unemployed, he previously has worked in

13   commercial conference -- commercial conference, setting up

14   settings.  He's worked for pharmaceutical companies and

15   things like that.

16        He does have -- he rents a room in a house.  There --

17   the landlord also resides there.  There's other people who

18   reside there.  He is someone who has gotten his MBA here

19   from the United States.  He got his MBA from my alma mater,

20   he went to UNC Chapel Hill.  He has his undergrad degree

21   with a degree in engineering from an university in

22   Australia.  But, he is willing to surrender his passport.

23        This is a case where one charge is a misdemeanor, the

24   other charge is not likely to face serious offense -- a

25   serious charge here.  He's essentially been accused of

9

1  flying a drone near Vandenberg Air Force Base --

2         THE COURT:  I read the complaint.

3         MS. MITCHELL:  Immediately after being questioned,

4  he informed the agents of all of the information that they

5  asked him.  He cooperated with them.  He answered their

6  questions.  He -- if there was a reason why this could have

7  resulted in him leaving, he could have at anytime previous

8  to this, left the United States.  He did not.  He has been

9  here.  He was intending to go back home for the holidays, as

10  people frequently travel during December.  He had a plane

11  ticket where he was planning on going back home for the

12  holidays, he is understanding that during the pendency of

13  this case, he's not going to be able to travel back and he

14  would be willing to surrender his passport.

15     For the type of case that he's got, with the fact that

16  he doesn't have a criminal history, he has a legal permanent

17  residence, which means that someone has done a background

18  check on him and has deemed him to be a person who is able

19  to reside here in the United States, there's no allegation

20  here that he was doing this on behalf of, like the Chinese

21  government or anything else like that.  He was essentially

22  present at Vandenberg when Space X was doing a launch.

23     And, so, this does not seem to be the type of case that

24  would necessitate a concern that he would otherwise flee or

25  not appear.  He is willing to, if need be, rent a car to

10

1  drive down to Los Angeles to make any kind of arrangements

2  that he would need to get there.  And I'm willing to

3  coordinate with the Pubic Defender there to make sure that

4  if other arrangements need to be made, they can be made so

5  that he makes his court appearances there.

6          THE COURT:  Okay.  Thank you.

7      Mr. Phillips?

8          MR. PHILLIPS:  Excuse me, your Honor, yes.  We

9  believe that he should be detained, both because he presents

10 a risk of flight and because he presents a risk to the

11 community, and I'll address them in turn.

12     As to the risk of flight, as Ms. Mitchell has already

13 conceded, the Defendant was arrested as he was at SFO hoping

14 to return to China.  Ms. Mitchell alleged that he has a

15 rental property, but it's my understanding that he is in

16 fact staying at an Airbnb and the tenancy on that Airbnb has

17 also ended.

18     So, in terms of connections to the community, we have

19 no present job, no residence, no family members, no one

20 willing to put up a bond here.  And really the only kind of

21 color of a bail package we have, is that he might be willing

22 to rent a car and drive himself down to L.A.

23          THE COURT:  Tell me about the arrest at the

24 airport.

25          MR. PHILLIPS:  My understanding, and we do have an

11

1  agent who was involved in the arrest here today if you'd

2  like to hear from him, is that he was at SFO, hoping to

3  return to China for a ticket he had already purchased.

4             THE COURT:  And what day was that?

5             MR. PHILLIPS:  That was yesterday at 11:00.

6             THE COURT:  Okay.  Was it the first time he was

7  arrested?  In other words, he had to contact with the

8  rangers, or whoever, at the Vandenberg Air Force Base, and

9  then they -- what did they do then?  Did they tell him,

10 "You're under arrest," or did they let him go?

11            MR. PHILLIPS:  No.  I think that they, as detailed

12 in the complaint affidavit, they seized certain materials,

13 including the drone and his cell phone.  They obtained a

14 warrant, but I think he was released at that point in time.

15            THE COURT:  And then -- then he was apprehended at

16 the airport?

17            MR. PHILLIPS:  Correct.  On the warrant in the

18 complaint.

19            THE COURT:  Okay.  All right.

20    Ms. Mitchell?

21            MS. MITCHELL:  And, your Honor, just for the

22 Court's further information, his plane ticket was a return

23 plane ticket.  It wasn't something where he had a one-way

24 ticket to go to China.  And this ticket had been purchased

25 in advance of the time that he had been actually set for --

12

1 this incident happened at Vandenberg.

2          THE COURT:  Uh-huh.  Okay.  So what about the

3 lease?  Is it an Airbnb or is it a rental apartment?

4          THE DEFENDANT:  Initially it was an Airbnb, but

5 now we went rent off the platform, because they give me a

6 discount for going off the platform.

7          MS. MITCHELL:  And so now it's basically a month-

8 to-month rate.

9          THE COURT:  Okay.  And so, Mr. Phillips, is there

10 any criminal history that you're aware of?

11          MR. PHILLIPS:  No, not that I'm aware of, though I

12 did want to address danger to the community, unless your

13 Honor thinks that wouldn't be necessary --

14          THE COURT:  Yeah -- oh, go ahead.  I interrupted

15 you.

16          MR. PHILLIPS:  No, no, no.  It's no problem at

17 all.  I would just note that there's abundant evidence here

18 and there's also a degree of sophistication.

19      This type of crime is very difficult to detect.  It's

20 only in the instance of a drone detection system at

21 Vandenberg that we were able to uncover it.  When the

22 Defendant was first approached, he lied about who he thought

23 the pilot of the drone was, and then he further lied about

24 the (indiscernible) issue of the flight, it's -- that it was

25 a flight of about 15 minutes, approximately, but in his

13

1 statements he said it was 11 to 12 minutes.

2    All of this is just to say that he has a predisposition

3 in not articulating accurate or truthful (sic) with law

4 enforcement.  He also -- there's evidence of premeditation,

5 your Honor.  As you saw from the complaint affidavit, he did

6 search through -- about the legality in what he was

7 intending to do, as early as November, and then he still

8 went forward with his plan.

9    All of that is to say that, given the difficulties of

10 addressing and detecting this type of crime and the

11 sophistication involved here, mainly his willingness to hack

12 a drone, we believe that he presents a risk of danger that

13 also cannot be adequately mitigated by a bail package.

14         MS. MITCHELL:  And, your Honor, to address that,

15 it was a drone.  And if the Government is concerned that he

16 is a risk of danger because he might fly a drone again, we

17 could surrender any drones that he has and that would

18 immediately address the issue.

19    The FBI (sic) -- or the agents there detained and

20 (indiscernible) the drone that he actually had.  His

21 recounting of how long the drone was in flight versus their

22 detection device, can be readily rectified as to looking at

23 the actual video footage on the drone itself to decide that

24 issue, and it seems like they immediately were aware of the

25 fact that the drone was at the location.  We could have a

14

1  stay away order from Vandenberg, if that is the issue.

2  (Indiscernible) concern here, indicated that he has a

3  history of flying drones in places where he is a risk of

4  harm to national security concerns.  This is the first time

5  that he's been arrested at Vandenberg.  There's not a long

6  history of him terrorizing other people with drones, and I

7  believe the fact that the drone was seized, alleviates any

8  risk of harm to the community.

9        THE COURT:  I'm willing to release Mr. Zhou, but

10 on the conditions that -- with the understanding, also, that

11 the Central District of California might make a different

12 decision when you get there.  You have to appear yourself

13 down there -- so, stay away from Vandenberg Air Force

14 Base --

15        MR. PHILLIPS:  Your Honor --

16        THE COURT:  -- or any other military bases --

17        MR. PHILLIPS:  I do apologize.  I should have

18 perhaps noted this in advance.  The AUSA prosecuting this

19 matter has asked that any release order be stayed for a

20 period sufficient to allow an appeal to be put forth.  And I

21 just wanted to correct one other thing that Ms. Mitchell

22 just offered.  My understanding from the complaint, and I

23 don't have this first-hand knowledge, is that in fact Mr.

24 Zhou was in fact in trouble in China for flying a drone

25 where he should not be flying.  So, Ms. Mitchell's

15

1  allegation is that this is the first time is incorrect.

2         THE COURT:  Okay.  How long do you want for the

3  stay for appeal?  Because I don't want to keep him any

4  longer than necessary.

5         MR. PHILLIPS:  Yeah, I think 48 hours.

6         MS. MITCHELL:  Your Honor --

7         THE DEFENDANT:  (Indiscernible) 24 hours.

8         MR. PHILLIPS:  Okay.  I'll let the AUSA know right

9  away.

10         THE COURT:  Okay.  Stay away from any military

11  bases.  No -- no possessions of drones.

12     Is there a date already in the Central District of

13  California, Mr. Phillips, that you know of?

14         MR. PHILLIPS:  No, no that I know of, your Honor.

15         THE COURT:  Okay.  So, Mr. Zhou, you're going to

16  go back on your own to the Central District of California

17  and -- oh, and turn in the passport, also, Ms. Mitchell --

18  but they'll set a date for you there, with regard to where

19  you're supposed to appear and what time.  You're in front of

20  the Central District of California magistrate judge.

21     And, I'm sorry, I didn't let Ms. DeBois make her

22  appearance.

23         MS. DEBOIS:  Good morning, your Honor.  Hannah

24  DeBois with the U.S. Pretrial Services.  Does your Honor

25  want a pre-bail or post-bail?  Or do you want pretrial

16

1 supervision?

2         THE COURT:  Yes, to pretrial supervision.  No for

3 post-bail report (indiscernible) --

4         MS. DEBOIS:  Could we -- my apologies, your

5 Honor --

6         THE COURT:  Uh-huh.

7         MS. DEBOIS:  Could we interview him in the lockup

8 today?

9         THE COURT:  Yeah.  Ms. Mitchell, would it be --

10         MS. MITCHELL:  Yes, your Honor.

11         MS. DEBOIS:  Thank you, your Honor.

12         THE COURT:  And now, I'm assuming that the

13 pretrial supervision will be then transferred to the Central

14 District of California?

15         MS. DEBOIS:  Depending on where he'll be residing,

16 but we'll work with the Central District of California.

17     Your Honor?

18         THE COURT:  Yes.

19         MS. DEBOIS:  Pretrial Services would just ask if

20 the Defendant is released in 24 hours, that he report to

21 Pretrial Services --

22         THE COURT:  Before he goes to -- yeah.  Okay.

23         MS. DEBOIS:  -- before he goes to the Central

24 District of California.  And I'll give him that information.

25         THE COURT:  Okay.  I'll make that clear.

17

1        MR. PHILLIPS:  I'm sorry, I do not -- I would ask

2   that -- and I think that it already does say that he

3   relinquish his passport.

4        THE COURT:  Yes.  It does here.  I'll put tomorrow

5   -- by tomorrow.  Okay.

6      So, the Defendant is going to be released on his own

7   recognizance, personal recognizance at this time,

8   (indiscernible) of bail, but the Defendant is subject to

9   each condition checked.  The Defendant must appear at all

10  proceedings as ordered by the Court and will surrender for

11  service of any sentence imposed.  The Defendant must not

12  commit any federal, state or local crime.  The Defendant

13  must not harass, threaten, intimidate, injure, tamper with

14  or retaliate against any witness, victim, informant, juror

15  or officer of the court, or obstruct any criminal

16  investigation.

17     The Defendant must submit to supervision by Pretrial

18  Services and must report immediately upon release and

19  thereafter as directed to Pretrial Services.  That's what

20  Ms. DeBois was talking about.

21     The Defendant must surrender any passports and other

22  travel documents to Pretrial Services by December 11th,

23  2024, when you go to them, and must not apply for any new

24  passports or travel documents.

25     The following conditions also apply.  The Defendant

18

1  must stay away from Vandenberger -- Vandenberg Space Force

2  Base, and any other military bases.  And the Defendant must

3  not possess any drones.

4       Mr. Zhou, do you understand these conditions?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  Okay.  And do you promise to abide by

7  them?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Okay.  So, I'm going to have you sign,

10 but I'm not going to sign until tomorrow because I'm going

11 to stay this for 24 hours so that the prosecution can appeal

12 this to the district judge, and then if it's -- depending on

13 what happens, then I'll sign it or not sign it.

14          MR. PHILLIPS:  Thank you very much, your Honor.

15          MS. MITCHELL:  And then, does your Honor want to

16 have a control --

17          THE COURT:  A control date.

18          MS. MITCHELL:  Either here or in the Central

19 District?

20          THE COURT:  Let's set a date here, a control date

21 here, just in case.  That's a good idea, since we don't have

22 date in -- Brenda, just hold onto it for now.  Let's set it

23 for December -- December 16th at 10:30 a.m.  Does that work

24 for folks?

25          MR. PHILLIPS:  That works for us.  Thank you, your

19

1  Honor.

2          THE COURT:  Okay.

3          MS. MITCHELL:  So come back here.

4          THE DEFENDANT:  Come back here.  Okay.

5          THE COURT:  Is there anything else we should talk

6  about while we're all here?

7          MR. PHILLIPS:  No.  Thank you, your Honor.

8          THE COURT:  Okay.  At this time, the Defendant

9  will be remanded to the custody of the U.S. Marshal for at

10  least 24 hours, allowing for the appeal -- thank you -- and

11  a return date on December 16th, 10:30 a.m. here.

12      (Proceedings adjourned at 11:02 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

20

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16          Echo Reporting, Inc., Transcriber

17          Thursday, December 12, 2024

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*