JOSEPH T. MCNALLY
Acting United States Attorney
DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division
KEDAR S. BHATIA (Cal. Bar No. Pending)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4442
     E-mail:   kedar.bhatia@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-10-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: April 7, 2025<br>Hearing Time: 8:00 a.m. |
| YINPIAO ZHOU, | Location:   Courtroom of the<br>            Hon. John F. |
| Defendant. | Walter |

The government hereby files its Sentencing Position. This Sentencing Position is based upon the attached memorandum of points and authorities and supporting exhibits, the files and records in this case, the Probation Office's Recommendation Letter, and any other evidence or argument that the Court may permit. The government

1 | respectfully requests the opportunity to supplement its position as
2 | may become necessary.
3 | Dated: March 24, 2025                    Respectfully submitted,
4 |                                          JOSEPH T. MCNALLY
  |                                          Acting United States Attorney
5 |
  |                                          DAVID T. RYAN
6 |                                          Assistant United States Attorney
  |                                          Chief, National Security Division
7 |
  |                                           /s/
8 |                                          KEDAR S. BHATIA
  |                                          Assistant United States Attorney
9 |
  |                                          Attorneys for Applicant
10|                                          UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   INTRODUCTION......................................................1

II.  STATEMENT OF FACTS................................................2

III. THE PLEA AGREEMENT, PROBATION & PRETRIAL SERVICES OFFICE'S
     RECOMMENDATION, AND THE GUIDELINES...............................6

IV.  SENTENCING RECOMMENDATION.........................................7

V.   CONCLUSION.......................................................10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On November 30, 2024, defendant Yinpiao Zhou flew his drone over Vandenberg Space Force Base and took several photographs of the military base from the air. Detection systems identified the drone, prompting law enforcement officers to travel to a nearby public park, approach defendant, and ask if he had seen any drone pilots. Defendant initially lied – saying he had not seen any drone pilots -- but officers saw him holding something under his jacket, asked him to take his hand out of his jacket, and found the drone that he had been flying over the military base. While speaking with officers, defendant admitted that he had downloaded special software onto his drone that allowed it to bypass typical flight restrictions and that he had previously been arrested and fined in China for flying his drone in restricted airspace. A search of defendant's cellphone showed that, before flying his drone over the military base, Zhou had done a Google search for "Vandenberg Space Force Base Drone Rules," which unambiguously told him drone flight over the base was not permitted.

Approximately a week after his drone flight, on December 9, 2024, FBI agents arrested defendant at the San Francisco International Airport as he was flying back to the People's Republic of China, where he is a citizen. Defendant was charged in a criminal complaint and was initially ordered released by a Magistrate Judge in the U.S. District Court for the Northern District of California. The government appealed that ruling to the duty judge in this District, the Hon. Hernán D. Vera, who ordered defendant detained pending

1

trial. Defendant was later charged with a felony violation and misdemeanor violation, and the government agreed to let him plead guilty the misdemeanor count pursuant to a plea agreement.

After balancing the § 3553(a) factors, including aggravating and mitigating factors, the government recommends that the Court sentence defendant to a term of time served and one year' supervised release. A sentence of time served – as opposed to probation – is appropriate to reflect the seriousness of the offense, to promote respect for the rule of law, to provide just punishment, and to afford adequate specific and general deterrence to criminal conduct.

## II.   STATEMENT OF FACTS

On the morning of November 30, 2024, drone detection systems at Vandenberg Space Force Base detected a drone flying over the base. *See* Complaint, dated Dec. 8, 2024 (Dkt. 1) ¶ 19(a); Government's Memorandum of Law in Support of Its Application for Revocation of Release Order as to Defendant Yinpiao Zhou, dated Dec. 12, 2024 (Dkt. 10); Plea Agreement (Dkt. 33). One of the drone detection systems identified the drone as a DJI model Mavic 2 drone, bearing a particular drone identification number (the "DJI Drone"). Complaint ¶ 19(b). Another drone detection system indicated that the DJI Drone appeared to originate from Ocean Park, a publicly accessible park adjacent to Vandenberg Space Force Base. *Id.* The drone then traveled south toward a space launch complex that had been used, earlier that day, to launch a payload for the National Reconnaissance Office. *Id.* ¶¶ 19(b)-(d). The drone then returned to the vicinity of Ocean Park. *Id.* The drone flew for a total of approximately 59 minutes and traveled to a height of approximately one mile above ground level. *Id.* ¶ 19(c).

After detecting the DJI Drone, Vandenberg Space Force Base Security Forces traveled to Ocean Park to investigate the drone travel. *Id.* ¶ 20(a). There, Security Forces personnel saw two individuals, Zhou and Individual-1, and asked to speak to them. *Id.* When Security Forces personnel started talking, Zhou and Individual-1 walked away. *Id.* Security Forces personnel again asked to talk to Zhou and Individual-1, who stopped and began speaking to them. *Id.* The personnel then asked if Zhou and Individual-1 had seen any drones flying nearby and, if so, whether they had seen the pilot. *Id.* Zhou stated that he had seen a drone but falsely stated that he did not see the pilot. *Id.*

While Zhou and Individual-1 were speaking to Security Forces personnel, Zhou had his hands inside his jacket. *Id.* ¶ 20(b). Security Forces personnel asked Zhou to remove his hands from his pocket. *Id.* After they did that, Zhou removed his hands, exposing a drone underneath his jacket. *Id.*

Security Forces personnel asked Zhou why he had lied about not seeing the drone pilot, and Zhou responded that he was afraid because he believed that the Security Forces personnel were from the military. *Id.* ¶ 20(d).

Zhou showed Security Forces personnel footage that Zhou had taken using his drone. *Id.* ¶ 20(e). Zhou showed the Security Forces personnel the footage on a cellphone device attached to the drone controller (the "Zhou Cellphone"). *Id.* Upon seeing that the footage consisted of parts of Vandenberg Space Force Base, Security Forces personnel instructed Zhou to delete footage of the base from the cellphone and watched Zhou delete the footage. *Id.*

3

Later that day, FBI agents arrived at Ocean Park and interviewed Zhou. *Id.* ¶ 21. After being advised of his *Miranda* rights and agreeing to speak to the agents, Zhou said, among other things, that on November 28, 2024, he and Individual-1 stayed overnight at Kirk Creek campground in the Big Sur area of Monterey County, California. *Id.* ¶ 21(a). Zhou stated that he tried to fly his drone at their campsite at Kirk Creek, but a park ranger told him not to fly it. *Id.* On November 29, 2024, Zhou and Individual-1 drove from Kirk Creek to Ocean Park. *Id.* ¶ 20(b).

Zhou acknowledged that in the morning on November 30, 2024, he took photographs of the SpaceX Space Launch Complex with his drone. *Id.* ¶ 20(c). Zhou stated that he knew the SpaceX facility was on a military installation. *Id.* Zhou said that his drone flew for 10 or 15 minutes and went approximately one to two miles south towards the SpaceX facility. *Id.*

Zhou also admitted he purchased software on a particular website that allowed the DJI Drone to bypass restrictions on altitude as well as no-fly-zone restrictions that would otherwise not allow his DJI drone to fly at Vandenberg Space Force Base. *Id.* ¶ 20(d). Zhou understood that drones operating in the United States had to comply with altitude and no-fly limits. *Id.* Zhou originally downloaded the bypass software in 2019 to get around the no-fly zones in Shanghai. *Id.*

Zhou also said that he had not registered his drone with the FAA. *Id.* ¶ 20(e). Zhou said FAA instructions for registering drones were not clear. *Id.* Zhou was familiar with licensing requirements for operating a UAS in China, but he never himself got a license for his UAS. *Id.* Zhou was not familiar with specific United States

4

requirements for UAS licensing, but he assumed that there must be some requirements. *Id.*

On or about December 4, 2024, the Hon. Alicia G. Rosenberg, United States Magistrate Judge, authorized a warrant to search the DJI Drone, a drone controller seized from Zhou's car, the Zhou Cellphone, Zhou's handheld camera, and two cellphones belonging to Individual-1, as well as storage medium inside the devices.

A review of an SD card inside the DJI Drone showed several photographs of Vandenberg Space Force Base taken from an aerial viewpoint. *Id.* ¶ 25. Metadata for those photographs show they were taken on November 30, 2024, and from a location above Vandenberg Space Force Base. *Id*.

A review of Zhou's cellphone showed that on or about November 10, 2024, Zhou searched on Google for the phrase "Vandenberg Space Force Base Drone Rules." *Id.* ¶ 26(a). When an agent later conducted the same search on Google, the agent saw various search results cautioning that drones were not permitted at Vandenberg Space Force Base. *Id.* Separately, in a conversation on October 22, 2024, Zhou bragged about hacking his drone so that it could go higher, saying "I hacked my drone. It's not supposed to go that high lol". *Id.* ¶ 26(b).

As noted in the Complaint, Zhou, age 39, is a Chinese citizen and a lawful permanent resident of the United States. *Id.* ¶ 23. Zhou arrived in the country on February 12, 2024. *Id.* ¶ 21(g). Individual-1 arrived in the United States on a visitor visa on or about November 26, 2024. *Id.* ¶ 23. Both Zhou and Individual-1 were scheduled to leave from San Francisco International Airport for return travel to China on December 9, 2024. *See Id.* ¶ 21(g).

On December 9, 2024, defendant was arrested at San Francisco International Airport based on a criminal complaint and arrest warrant that were filed the day before. A Magistrate Judge in the U.S. District Court for the Northern District of California initially ordered defendant released pending trial. *See United States v. Zhou*, 3:24-mj-71740 (N.D. Cal.). The government appealed that ruling to the duty judge in this District, the Hon. Hernán D. Vera, who held a hearing and then ordered defendant detained pending trial. Dkts. 7, 10, 13.

### III. THE PLEA AGREEMENT, PROBATION & PRETRIAL SERVICES OFFICE'S RECOMMENDATION, AND THE GUIDELINES

On January 7, 2025, the grand jury returned an indictment charging defendant with one count of failure to register an aircraft, in violation of 49 U.S.C. § 46306(b)(6)(A), a felony, and one count of violating the national defense airspace, in violation of 49 U.S.C. §§ 46307, 40103, a misdemeanor. On March 10, 2025, defendant pleaded guilty pursuant to the Plea Agreement with one count of violating the national defense airspace, in violation of 49 U.S.C. §§ 46307, 40103, a misdemeanor.

In the Plea Agreement, the parties stipulated that the base offense level was 6. Plea Agreement ¶ 11.[1] Defendant is also eligible for a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Based on the Probation Recommendation Letter, dated March 21, 2025 (Dkt. 39), the government understands defendant has no criminal history – except his prior incident in China – making him

---

[1] At the change-of-plea proceeding on March 10, 2025, the parties agreed, and the Court ordered, that the Probation Office should complete only a modified Presentence Investigation Report that would include only defendant's criminal history.

6

eligible for a two-level reduction as a zero-point offender. See U.S.S.G. § 4C1.1.

At offense level 2 and Criminal History Category I, the Guidelines recommended range is 0-6 months' imprisonment.[2] The Probation Office recommends a sentence of one year' probation. See Dkt. 39 at 1.

### IV. SENTENCING RECOMMENDATION

The government recommends that the Court sentence defendant to time-served and a term of one year' supervised release. This sentence is warranted given the nature and circumstances of the offense and the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide for general deterrence. This sentence accounts for the mitigating circumstances in this case and is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

The dispute between the parties over the appropriate sentence is narrow: the government recommends a sentence of time-served and one-year supervised release and the defendant is asking for a term of probation.

Under the familiar § 3553(a) factors, a term of time-served, rather than probation, is appropriate. Defendant's crime was pre-planned and serious. At least one month before his arrest, he began planning the scheme, searching on Google for the Vandenberg Space

---

[2] If defendant does not have any criminal history that results in points under U.S.S.G. § 4A1.1, he is also likely eligible for a two-level reduction for being a zero-point offender under U.S.S.G. § 4C1.1. At offense level 2 and Criminal History Category I, the Guidelines Range is still 0-6 months' imprisonment.

Force Base drone rules. That search showed him that drones were prohibited over the military base, but he was not deterred. This pre-planning shows a calculated scheme to bypass the rules – using his "hacked" drone – to capture photographs of a sensitive and active military base. He also admitted to agents that years ago he downloaded special software that let him bypass restrictions on altitude and no-fly-zone restrictions. The nature, circumstances, and seriousness of defendant's offense warrant the recommended sentence. 18 U.S.C. § 3553(a)(1).

There is also a need for specific deterrence that calls for a custodial sentence. *See* 18 U.S.C. § 3553(a)(2)(b). This is not defendant's first time being arrested for unlawful drone flight. Defendant himself admitted to agents that he was previously arrested and fined for flying his drone in unauthorized airspace in Shanghai. For many people, one arrest would be enough to deter them from such dangerous conduct, but not so for defendant. A sentence of time-served will send a stronger message of specific deterrence.

Finally, there is a significant need for a sentence in this case to send a message of general deterrence. *See* 18 U.S.C. § 3553(a)(2)(b). Drone flight over military bases and other sensitive locations can create a meaningful security risk and cause the waste of government resources. Vandenberg Space Force Base is an active and sensitive military installation, launching spacecraft for different government agencies and private companies. Moreover, when private individuals fly drones over these sites, law enforcement and military officers must waste time tracking down the threat posed by drone flights over bases. In one recent instance, drones flying over an Ohio military base caused the closure of airspace for several hours,

and in another case drone flight caused the closure of airspace at an airport. *Drone Sightings Lead to Airspace Shutdown at Ohio Military Base*, Air Force Times (Dec. 16, 2024)[3]; *Drone Sighting Temporarily Shuts Down Runways at New York Airport*, ABC News (Dec. 14, 2024)[4]. Drone flights in unauthorized airspace can even lead to collisions with civilian aircraft, like one drone that crashed into a firefighting aircraft during the recent Palisades fire, taking the firefighting aircraft out of use for several days during the fire. *Drone Crash Disabled a Firefighting Plane. Many Irate with 'Shameful' Operator*, Los Angeles Times (Jan. 9, 2024).[5] There is a need for general deterrence, and this important need calls for a sentence of time-served instead of probation.

While there are mitigating circumstances present here, those circumstances are adequately accounted for in defendant's misdemeanor conviction (as opposed to a felony conviction) and a sentence of time-served. Defendant will avoid the collateral consequences that come from a felony conviction, including the heightened immigration consequences from such a conviction. Of course, with either time-served or probation, defendant will be released from custody after a sentence is imposed. The government submits that a time-served sentence balances the aggravating and mitigating factors and is sufficient but no greater than necessary to accomplish the legitimate ends of sentencing.

---

[3] https://www.airforcetimes.com/news/your-air-force/2024/12/16/drone-sightings-lead-to-airspace-shutdown-at-ohio-military-base/.

[4] https://abcnews.go.com/US/drone-sighting-temporarily-shuts-runways-new-york-airport/story?id=116792168.

[5] https://www.latimes.com/california/story/2025-01-09/drone-collides-with-firefighting-aircraft-over-palisades-fire-faa-says.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court impose the following sentence: a term of imprisonment of time-served; a one-year term of supervised release; and a mandatory special assessment of $25.

This sentence is sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities. 18 U.S.C. § 3553(a).